UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at WINCHESTER

ALTON L. PETTY,                          )
                                         )
        *Plaintiff*,                     )
                                         )        Case No: 4:06-cv-37
v.                                       )        Judge Mattice
                                         )
STATE OF TENNESSEE -                     )
DEPARTMENT OF CHILDREN'S                 )
SERVICES,                                )
                                         )
        *Defendant*.                     )

## MEMORANDUM AND ORDER

Plaintiff Alton L. Petty brought this action against Defendant State of Tennessee, Department of Children's Services ("DCS") claiming that Defendant's failure to hire Plaintiff was motivated by Plaintiff's gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.*, and by Plaintiff's age in violation of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 622 *et seq.*

Before the Court is Defendant's Motion for Summary Judgment. For the reasons discussed below, Defendant's Motion for Summary Judgment is **GRANTED**.

## I.    STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.*

*v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the nonmoving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Id.* at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## II.    FACTS

The facts, viewed in the light most favorable to the Plaintiff, are as follows.

Plaintiff Alton Petty is a male resident of Coffee County, Tennessee who was born on October 3, 1946. (Court Doc. No. 1 ¶ 1, 4.) Defendant Tennessee Department of

Children's Services ("DCS") is a state agency which provides protective and preventative services to children and families that are at risk for commitment to state custody for reasons of neglect, unruly behavior, dependency, and delinquency. (Court Doc. No. 22-2 ¶ 4.) DCS employs fifty-two case managers who are grouped into eight teams. At the head of each team is a team leader who is responsible for hiring and supervising the team's case managers. There are two team coordinators who oversee the eight team leaders. (Court Doc. No. 16-3 at 4.)

When DCS has an open position that it needs to fill, it informs the Tennessee Department of Personnel. The Tennessee Department of Personnel provides DCS with a "register" which lists all of the minimally-qualified applicants who have expressed an interest in the available position. DCS then interviews the applicants on the register. The interviews are conducted by three to five team leaders, including the leader of the team hiring for the open case manager position. (Court Doc. No. 15, Affidavit of Elizabeth Anderson ("Anderson Aff.") ¶ 4.) The team leader whose team has the open position decides who they want to hire. The team leader can, but is not required to, discuss their employment decision with the other team leaders who participated in the interviewing process. (Court Doc. No. 16-4, Deposition of Olivia Aschenbacher ("Aschenbacher Dep.") at 15.) The team coordinator is then notified which applicant the team leader has chosen to hire for the position. The team coordinator reviews the recommended applicant's credentials and submits the recommended applicant to the central office for hire. (Court Doc. No. 16-5, Deposition of James Coop ("Coop Dep.") at 5-7.)

In January 2004, DCS had two open Case Manager I positions. DCS requested, and the Tennessee Department of Personnel provided, a register of minimally qualified

eligible applicants consisting of six names, including that of the Plaintiff. (Court Doc. No. 16-3.) Elizabeth Anderson was the leader of the team that was hiring for the open case manager positions. (Aschenbacher Dep. at 15.) As such, Anderson led the interview process and made the decision as to which applicants should be hired. (*Id.*)

On January 15, 2004, Plaintiff was interviewed by a panel of DCS team leaders, including Anderson. (Anderson Aff. ¶ 6.) During Plaintiff's interview, he was asked a number of questions about his work experience. Plaintiff had written on his application that he was previously employed as a teacher with the Rutherford County School District for two years. (Court Doc. No. 23-4.) During the discussion about his teaching experience, Plaintiff revealed that he was not a full-time, certified teacher but was a substitute teacher. (Anderson Aff. ¶ 7.) Plaintiff's application also stated that he had been employed by the Veteran's Administration as a police officer. (Court Doc. No. 23-4.) After discussing with Plaintiff his duties as a police officer with the Veteran's Administration, Anderson understood his position to have been more akin to that of a security guard, not a police officer in the traditional sense. (Anderson Aff. ¶ 9.)

Following the interviews, DCS hired two women, Rita Owens and Beverly Jordan, for the case manager positions. (Court Doc. No. 16-3 at 31.) Plaintiff was not hired because Anderson believed that Owens and Jordan were more qualified and because she felt that Plaintiff had misrepresented information on his employment application. (Anderson Aff. ¶ 11.)

DCS was again hiring for a case manager position in October 2004. DCS requested a list of eligible applicants from the Department of Personnel and Plaintiff was on the register, along with two women. Plaintiff had updated his employment application to state

that he had previously been employed as a substitute teacher to clear up any misconception about whether he was a licensed, certified teacher. (Petty Dep. at 39, 46.)

On October 27, 2004, Plaintiff was interviewed by an all-female panel of team leaders, including Anderson, whose team was again hiring for the open position. (Petty Dep. at 43; Anderson Aff. at ¶ 13.) During his interview, Plaintiff asked the interview panel if DCS ever hired men because almost everyone he saw working at DCS were women. (Petty Dep. at 43-44.) He was informed that men were hired by DCS and that a number of men were then working for DCS. Plaintiff also asked if he was not hired because of his age. Anderson informed Plaintiff that he was not hired because he had misrepresented his work experience on his employment application. (Anderson Aff. at ¶ 14.) Members of the interview panel have described Plaintiff's demeanor during the October 2004 interview as rude, confrontational, and argumentative. (Aschenbacher Dep. at 12; Anderson Aff. ¶ 15.) Plaintiff claims that he was forceful and straightforward but not argumentative during the interview. (Petty Dep. at 42-43.)

Following the October 2004 interviews, DCS hired Tenna Hopkins, a woman, for the case manager position. (Court Doc. No. 16-3 at 31.) According to Anderson, Plaintiff was not hired because Anderson believed that Hopkins was more qualified for the position, because Plaintiff had performed poorly in his interview, and because Plaintiff had previously misrepresented his work experience on his employment application. (Anderson Aff. ¶ 15.)

Plaintiff later spoke with Noah Maignon, a former DCS team leader. (Petty Dep. at 60.) Maignon told Plaintiff that he did not understand why Plaintiff had not been hired by DCS and that he believed Plaintiff was being discriminated against because of his age and

gender.  Maignon said that he had lobbied to get Plaintiff hired but that another DCS employee had said that Plaintiff was not a good worker and had threatened to quit if he were hired.  (*Id.* at 60-61, 64.)

Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") on November 20, 2004.  (Court Doc. No. 16-6.)  The EEOC conducted an interview with Noah Maignon as part of its investigation into Plaintiff's complaint.[1]  Maignon told the EEOC that he overheard discussions about whether to hire Plaintiff.  The overall contention was that Plaintiff would be hard to manage because of his age, gender, and his military background.  Maignon did not indicate who was involved in these discussions.  He stated only that "when you work in an area, you hear things." (Court. Doc. No. 23-9.)

## III.  ANALYSIS

Plaintiff asserts causes of action under Title VII for employment discrimination based on gender and under the ADEA for employment discrimination based on age.  Each cause of action will be addressed separately below.

### A.  Plaintiff's Claim Under the ADEA

Defendant argues that the Court does not have subject matter jurisdiction over Plaintiff's ADEA claim.  (Court Doc. No. 26-2.) In *Kimel v. Florida Board of Regents*, 120 S. Ct. 631 (2000), the Supreme Court held that "the ADEA is not a valid exercise of Congress' power under § 5 of the Fourteenth Amendment."

---

[1]     The admissibility of the EEOC's notes from its interview with Noah Maignon is highly questionable.  The Court does not consider inadmissible evidence in deciding on a motion for summary judgment. *See Carter v. University of Toledo*, 349 F.3d 269, 274 (6th Cir. 2003).  In analyzing the instant motion, however, the Court will assume that the EEOC notes are admissible.

In the absence of express state consent or express congressional abrogation by federal statute, the Eleventh Amendment bars action in federal court against the state. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54, 116 S. Ct. 1114 (1996). A state agency is protected by the state's immunity as the state itself. *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 100, 104 S. Ct. 900 (1984). Tennessee has expressly preserved its sovereign immunity, *see* Tenn. Code Ann. § 20-13-102, and the state has not consented to suit in the federal court. *See, e.g., Boyd v. Tennessee State University*, 848 F.Supp. 111, 114-15 (M.D. Tenn 1994). The ADEA did not validly abrogate the states' sovereign immunity from suits brought by private individuals. *Kimel*, 528 U.S. at 91; *Coger v. Board of Regents of Tenn.*, 209 F.3d 485, 486 (6th Cir. 2000). Thus, the Court does not have subject matter jurisdiction over Plaintiff's claim against Defendant under the ADEA.

Plaintiff argues that the Supreme Court of Tennessee "apparently rejected the immunity argument" in *Bresden v. Tennessee Judicial Selection Committee*, 214 S.W.3d 419 (Tenn. 2007). In *Bresden*, the court had to decide whether judicial nominees were "employees" under the Tennessee Human Rights Act ("THRA"). Because "employee" is not defined in the THRA, the court looked to federal case law interpreting Title VII for instruction. The court noted the "the intent of the THRA is to provide for execution within Tennessee of the policies embodied in the federal civil rights statutes" and that "the THRA is generally interpreted consistently with Title VII." *Id.* at 430. Plaintiff argues that, because the *Bresden* court stated that a claim under the THRA should be treated the same as a claim under Title VII, the same should be true for a claim under the ADEA. (Court Doc. No. 32 at 2-3.)

Plaintiff's argument might be persuasive if this were an issue of the merits of Plaintiff's ADEA claim and not an issue of jurisdiction based on Eleventh Amendment sovereign immunity. The merits of a claim under the ADEA and the THRA are treated as overlapping claims in most instances. *See Butts v. McCullough*, 237 Fed. App'x 1, 4 (6th Cir. 2007) (noting that the ADEA analysis subsumes the state law claim under the THRA). However, whether the state has waived its Eleventh Amendment immunity is unrelated to the merits of a claim and thus, unrelated to the THRA. There is no doubt that Tennessee has expressly preserved its Eleventh Amendment immunity and that ADEA did not validly abrogate the state's immunity right.

A Court must dismiss an action in which it lacks subject matter jurisdiction. Fed. R. Civ. Proc. 12(h)(3). Accordingly, Plaintiff's claim against Defendant alleging age discrimination in violation of the ADEA is **DISMISSED WITHOUT PREJUDICE**.

### B.    Plaintiff's Title VII Claims

An employee may prove claims of discrimination under Title VII by either direct evidence or circumstantial evidence. *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir.2003). When a plaintiff presents direct evidence of discrimination, "the burden of both production and persuasion shifts to the employer to prove that it would have terminated the employee even if it had not been motivated by impermissible discrimination." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). "[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). "Consistent with this definition, direct

evidence of discrimination does not require a fact finder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003) (internal citations omitted).

When, however, a plaintiff's claims of discrimination are based on circumstantial evidence, the Court applies the burden-shifting analysis initially described by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *McClain v. NorthWest Community Corr. Ctr Judicial Corr. Bd.*, 440 F.3d 320, 332 (6th Cir. 2006). That analysis may be summarized as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a *prima facie* case of discrimination. Second, if the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (quoting *McDonnell Douglas*, 411 U.S. at 802). "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.' " *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (alteration in original) (quoting *Burdine*, 450 U.S. at 253).

The Court will evaluate Plaintiff's claims under these evidentiary structures.

        1.     *Plaintiff Has Established a Prima Facie Case of Gender Discrimination*

Title VII prohibits an employer from discriminating against an applicant based on

gender. 42 U.S.C. § 2000e-2(a). To establish a *prima facie* case for failure to hire, Plaintiff must show that (1) he is a member of a protected class, (2) he applied and was qualified for a job, (3) despite his qualifications, he was rejected, and (4) after his rejection, the position remained open and other similarly qualified individuals who were not members of the protected class were hired. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1972); *Birch v. Cuyahoga County Probate Court*, 392 F.3d 151, 165 n.12 (6th Cir. 2004); *Leadbetter v. Gilley*, 385 F.3d 683, 690 (6th Cir. 2004).

It is undisputed that Plaintiff is male and therefore, for purposes of a Title VII gender discrimination claim, a member of a protected class. It is also undisputed that Plaintiff applied for the Case Manager I position on a number of occasions, was not hired, and that a woman was hired instead. The only prong of Plaintiff's *prima facie* case that Defendant challenges is whether Plaintiff was qualified for the position.

In evaluating the qualifications component of Plaintiff's *prima facie* case, the Court looks only to the applicant's general, objective qualifications. *See Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 575-76 (6th Cir. 2003) (en banc). These include "education, experience in the relevant industry, and demonstrated possession of the required general skills." *Id.* at 576. "The *prima facie* burden of showing that a plaintiff is qualified can therefore be met by presenting credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field." *Id.* at 575-76.

Plaintiff appeared on the register for the DCS Case Manager I position in both January and October 2004. That he appeared on the register necessarily means that the

Department of Personnel found that his education and work experience met the minimum qualifications for the position. (Court Doc. No. 23-3 at 3-4.) During Plaintiff's interviews with DCS, DCS never contended that he was not minimally qualified for the position. (Aschenbacher Aff. at 12.) Because an applicant must show only that he met the minimum qualifications for the position at the *prima facie* stage, Plaintiff has met that burden.

Defendant argues that Plaintiff was not qualified for the position because he misrepresented his work experience on his employment application. Defendant also argues that Plaintiff was not qualified because of "his poor interview performances in that he was defensive, argumentative, and confrontational." (Court Doc. No. 13 at 17.)

Most circuits refuse to consider a defendant's reasons for refusing to hire an applicant in determining whether, in the context of the *prima facie* case, the plaintiff was qualified. *See MacDonald v. E. Wyo. Mental Health Ctr.*, 941 F.2d 1115, 1119 (10th Cir. 1991); *Siegel v. Alpha Wire Corp.*, 894 F.2d 50, 54 (3d Cir. 1990); *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1505 (5th Cir. 1988); *Yarbrough v. Tower Oldsmobile, Inc.*, 789 F.2d 508, 512 (7th Cir. 1986). Further, district courts within the Sixth Circuit have arrived at the same conclusion. *See*, *e.g.*, *Heck v. Board of Trustees, Kenyon College*, 12 F. Supp. 2d 728, 739-40 (S.D. Ohio 1998); *Ligon v. Triangle Pac. Corp.*, 935 F. Supp. 936, 940-41 (M.D. Tenn. 1996).

The rationale behind this rule is sound: While, under *McDonnell Douglas*, a defendant may offer legitimate nondiscriminatory reasons for its decision to terminate a plaintiff *after* the plaintiff has established his *prima facie* case, it should not be able to subvert the burden shift set forth in *McDonnell Douglas* by offering the same to attack a

plaintiff's *prima facie* case. *See Blackwell v. Sun Elec. Corp.*, 696 F.2d 1176, 1180 (6th Cir. 1983) ("[I]f we were to hold that a plaintiff's *prima facie* case fails if his qualifications are challenged by the defendant, we would effectively preclude . . . discrimination suits of this kind."). For this reason, the Court declines to consider DCS's proffered reasons for refusing to hire Plaintiff when evaluating Plaintiff's *prima facie* case.

DCS also argues that Plaintiff was not qualified for the position because of "his lack of any degree or classes in education, child and family studies, psychology, or social work" and "his lack of experience in social work and in dealing with the types of children who come into the custody of DCS." (Court Doc. No. 13 at 17.) At the *prima facie* stage in the litigation, Plaintiff need not establish that he was the most qualified applicant. He need only to establish that he met the minimum requirements. *Wexler*, 317 F.3d at 575-76. Plaintiff was on the Department of Personnel's register for the Case Manager I position, and therefore met the minimum qualifications.

The facts show that Plaintiff is male, that he applied for and was minimally qualified for the position of Case Manager I with DCS, that he was not hired, and that DCS filled the position with a woman. Plaintiff has therefore established a *prima facie* case of gender discrimination.

       2.     *Defendant Has Put Forth a Non-Discriminatory Basis for Not Hiring Plaintiff*

Once Plaintiff has established a *prima facie* case of gender discrimination, the burden shifts to the Defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (quoting *McDonnell Douglas*, 411 U.S. at 802).

This case involves two separate employment decisions. In January 2004, DCS interviewed for and hired two new case managers. In October 2004, DCS interview and hired one new case manager. Plaintiff was interviewed in both January and October 2004 but was not hired on either occasion.

DCS's hiring process is undisputed. The team leader whose team has the open position leads the interview process and determines which applicant will be hired. Although the recommended applicant must be approved by the team coordinator, in this case James Coop, he has never questioned the recommendation of a team leader with respect to who should be hired. (Coop Dep. at 20-21.) Thus, it is apparent that DCS's ultimate decision-maker for the hiring of case managers is the team leader in charge of the team that has the open position. For the two hiring periods relevant to this case, January and October 2004, the leader of the team that was hiring for its open case manager position was Elizabeth Anderson. (Aschenbacher Dep. at 15.)

Anderson has stated that she did not recommend that Plaintiff be hired in January 2004 because "[a] more qualified person was selected" and Plaintiff "gave false information on his application." Anderson stated that she "cannot risk having someone making misrepresentations while working at" DCS and that she "cannot be questioning everything a case manager does during an investigation." (Anderson Aff. ¶ 11.) In October 2004, Anderson did not recommend Plaintiff to be hired because "[a] more qualified person was selected" and because Plaintiff "was argumentative and confrontational during the interview." (Court Doc. No. 23-3 at 8; Anderson Aff. ¶ 14.) Anderson also emphasized the fact that Plaintiff had previously misrepresented information on his employment application. (Anderson Aff. ¶ 14.) In addition, DCS claims that Plaintiff did not have educational

background or the requisite work experience dealing with the type of children that come into the custody of DCS.

DCS has therefore articulated a number of reasons for not hiring Plaintiff:  (1) that he misrepresented his prior work experience on his employment application; (2) that he did not perform well in the interview; and (3) that he was not the most qualified applicant for the position.  None of these reasons relate to the Plaintiff's gender.  Courts have previously found each of these to be legitimate, nondiscriminatory reasons for making an employment decision. *See Milligan-Jensen v. Michigan Tech. Univ.*, 975 F.2d 302 (6th Cir. 1992) (denying relief to employee who falsified information on employment application); *Heath v. Ohio Turnpike Commission*, 85 Fed. App'x 494, 497 (6th Cir. 2004) (finding that poor performance in an interview was a legitimate, nondiscriminatory basis for a refusal to promote); *Wrenn v. Gould*, 808 F.2d 493, 501 (6th Cir. 1992) (employer had articulated legitimate, nondiscriminatory basis for refusing to hire plaintiff by stating that plaintiff was not the most qualified applicant).  Defendant has thus met its burden of articulating a legitimate, nondiscriminatory reason for not hiring Plaintiff.

3. *Plaintiff Has Not Put Forth Sufficient Evidence Showing that Defendant's Proffered Basis for Not Hiring Plaintiff was a Pretext for Gender Discrimination*.

Because Defendant has articulated a legitimate, nondiscriminatory reason for refusing to hire Plaintiff, the burden shifts back to the Plaintiff to show, by a preponderance of the evidence, that the legitimate reasons offered by the Defendant "were not its true reasons, but were a pretext for discrimination."  *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (quoting *McDonnell Douglas*, 411 U.S. at 802).  Once the

defendant has proffered a legitimate, nondiscriminatory reason for dismissal, an employer's explanation cannot be rejected "unless there is sufficient basis *in the evidence* for doing so. To allow the jury simply to refuse to believe the employer's explanation would subtly, but inarguably, shift the burden of persuasion from the plaintiff to the defendant." *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994).

Plaintiff may meet this burden by offering evidence sufficient to establish that Defendant's proffered reason: (1) had no basis in fact; (2) did not actually motivate the defendant's decision not to hire the plaintiff; or (3) was insufficient to warrant the refusal to hire the plaintiff. *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 576 (6th Cir. 2006); *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994).

### a.    No factual basis

If Plaintiff can show that the Defendant's proffered reason for not hiring him is false, that evidence, combined with Plaintiff's *prima facie* case, "may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000). The Sixth Circuit has held that "the most reasonable inference for jurors to draw, once they disbelieve the defendant's proffered explanation for its actions, will ordinarily be that the real reason the defendant acted as it did was illegal discrimination." *Kovacevich v. Kent State University*, 224 F.3d 806, 839 (6th Cir. 2000).

### (1)    *Misrepresentation on employment application*

Defendant has stated that Plaintiff was not hired in January 2004, in part, because he "gave false information on his application." Anderson has stated that Plaintiff's misrepresentation of his work experience on his January 2004 application was also one

of the reasons that he was not hired after the October 2004 interviews.  (Anderson Aff. ¶ 14.)  Plaintiff claims that he did not give false information on his employment application but that there was a misunderstanding related to his work experience.

On his January 2004 employment application, Plaintiff stated that, among other jobs, he had previously been a teacher for two years and that he "taught school at Rutherford County." (Court Doc. 23-4.)  Anderson claims that, during Plaintiff's interview in January 2004, she "discovered that Mr. Petty was never a certified, licensed teacher in Rutherford County, rather he was a substitute teacher." (Anderson Aff. ¶ 7.) She contends that Plaintiff was not forthcoming with the information that he was a substitute teacher, rather she had to ask a number of questions before he would admit it.  (*Id.* at ¶ 8.)

Plaintiff argues that he never misrepresented information on his employment application.  Plaintiff claims that he did just what was stated on his employment application - taught children - and that he never indicated that he was certified or licensed.  (Petty Dep. at 36-37.)    Petty acknowledges that he wrote "teacher" on his application instead of "substitute teacher" but denies that this is a factual discrepancy and claims that he explained that he was a substitute teacher in his interview.  (*Id.* at 37-38.)   On his application for the October 2004 position, he added the word "substitute" in the space where he had noted his prior work experience as a teacher.  (*Id.* at 38-39.)

To establish pretext in this manner, a plaintiff must show "more than a dispute over the facts" upon which the employer relied in making its employment decision; he must put forth evidence that the defendant did not "honestly believe" in the given reason for its employment decision.  *Braithwaite v. The Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001). *See also Majewski v. Automatic Date Processing, Inc.*, 274 F.3d 1106, 1117 (6th cir. 2001)

("As long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because its shown to be incorrect.") In determining whether the defendant had an "honest belief" in the proffered basis for not hiring the plaintiff, the Court examines whether the defendant made a "reasonably informed and considered decision." *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998).

Plaintiff has not shown that Anderson did not honestly believe that he had misrepresented information on his employment application. Plaintiff does not deny that he listed "teacher" on his application when he was, in fact, a substitute teacher. He admitted to the interviewers that he was actually a substitute teacher. Anderson contends that she thought his claim that he was a "teacher" was a misrepresentation of his work experience. Anderson has stated that "[b]eing a substitute teacher is entirely different than being a licensed, certified, full-time teacher." (Anderson Aff. ¶ 8.) Plaintiff has offered no evidence that Anderson did not have an "honest belief" that a substitute teacher is different than a teacher. Thus, Plaintiff has shown only that there is a dispute over the facts underlying DCS's decision not to hire him and has not sustained his burden at the summary judgment stage. *Braithwaite v. The Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001).

DCS also contends that Plaintiff misrepresented his prior position with the Veteran's Administration. On his employment application, Plaintiff stated that he was a "Police Officer" for twenty years and that involved "law enforcement" and "helping people." According to Anderson, during his interview, Plaintiff told the interview panel that he was a security guard and not a police officer. (Anderson Aff. ¶ 9.) Plaintiff now claims that Anderson misunderstood his position with the Veteran's Administration. He contends that

he was a police officer and that he has never been a security guard.  (Petty Aff. ¶ 3-4.)

At  the time Anderson made the hiring decision, she had interviewed Plaintiff during which time he was afforded the opportunity to explain the discrepancies between his application and his actual work experience.  But even after the interview, Anderson thought there was a material discrepancy between Plaintiff's employment application and his actual work experience.  Anderson has stated that Plaintiff "told the interview panel that he was a security guard and not a police officer."  (*Id.* at ¶ 9.)

Even if Anderson misunderstood Plaintiff's work experience, he has not shown that she did not "honestly believe" that he was a security guard.  Plaintiff's evidence shows only that he and Anderson disagreed over the nature of his job at the Veteran's Administration. This is simply a "dispute over facts" and is not enough to sustain Plaintiff's burden at this stage. *Braithwaite*, 258 F.3d at 494.

Plaintiff also claims that the misunderstanding over his work experience was not the Defendant's true motivation for not hiring Plaintiff.  However, Anderson has articulated exactly why she felt that Plaintiff's misrepresentation on his employment application made him an unsuitable candidate.  Anderson stated:

> I cannot risk having someone making misrepresentations while working at Child Protective Service. If I cannot trust a person in an interview, I would not be able to trust his or her documentation if they worked in Child Protective Services.  With our job in Child Protective Services, I cannot be questioning everything a case manager does during an investigation.

(Anderson Aff. ¶ 11.)  Plaintiff has offered no evidence rebutting Anderson's explanation of why she considered Plaintiff's misrepresentation of his work experience so important. Title VII was not intended to "diminish traditional management prerogatives." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 259 (1981).  Plaintiff has thus failed to meet his

burden of showing that Defendant's proffered reason for failing to hire him was pretextual.

(2)    <em>Interview</em>

Defendant has stated that Plaintiff was not hired in October 2004, in part, because of his attitude during his interview.  Plaintiff disputes the Defendant's characterization of his attitude.

During his October 2004 interview, Plaintiff acknowledges that he asked the interviewers if DCS ever hired men.  He claims that he was just attempting to gather information because he had not seen very many men working at DCS.  Plaintiff contends that he was not argumentative or antagonistic but that he was "forceful" and "more straightforward."  (Petty Dep. at 43.)   However, the interviewers characterized Petty's attitude as "rude" (Aschenbacher Dep. at 12), "confrontational," and "argumentative." (Anderson Aff. ¶ 15.)

The Court acknowledges that the quality of an interview is a subjective factor in the hiring process and that "subjective reasons provide ready mechanisms for discrimination." *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 461 (6th Cir. 2004).   However, two separate interviewers both independently stated that Plaintiff did not conduct himself well in the interview.   Other than his own testimony, Plaintiff has offered no objective contradictory evidence.   The consistency of the interviewers' opinions diminishes the Court's concern about the inherent subjectivity of an interview.  *See Plumb v. Potter*, 212 Fed. App'x 472, 480 n.3 (6th Cir. 2007) (noting that concerns about the subjectivity of an interview were "lessened" because two interviewers had agreed that an applicant's interview was poor.)   In addition, Plaintiff acknowledges having asked the interviewers whether they ever hired men and if he was not hired because of his age.  It is not difficult

to imagine how an interview panel made up of females younger than the Plaintiff might have construed such questions as being confrontational.

The Court is not a "super personnel department" and cannot second-guess an employer's basis for not hiring an applicant in the absence of discriminatory evidence. Although Plaintiff takes issue with the interviewers' characterizations of his attitude, he has produced no evidence that the interviewers did not honestly believe that Plaintiff was hostile during the interview. A plaintiff's bald allegation that the defendant's proffered basis for not hiring him was pretextual is not enough to survive summary judgment. *See White v. Baxter Healthcare Corp.*, 2007 WL 1119881, *16 (E.D. Mich. April 16, 2007) ("Plaintiff's bald allegation that he could not have fared poorly in the interview as the interviewers have testified he did will not suffice to defeat Defendant's Rule 56 evidence to the contrary.") Accordingly, Plaintiff has not sustained his burden of showing that DCS's proffered basis for not hiring him was pretextual.

(3)    *Qualifications Evidence*

Defendant also claims that Plaintiff was not hired because there were more qualified applicants. (Anderson Aff. ¶ 15.) Plaintiff argues that he was as qualified, if not more qualified, than the applicants who DCS hired.

Whether qualifications evidence is sufficient to raise a question of fact as to pretext depends on whether a plaintiff offers other evidence of discrimination. *Bender v. Hecht's Department Stores*, 455 F.3d 612, 626 (6th Cir. 2006). If a plaintiff provides other evidence of discrimination, that evidence, coupled with the qualifications evidence, may be enough to survive summary judgment. *Id.* at 627. However, where there is little or no probative

evidence of discrimination, to survive summary judgment, an applicant's qualifications must be "so significantly better than the successful applicant's qualifications that no reasonable employer would have chosen the latter applicant over the former." *Id.*

Plaintiff has a degree in Agricultural Business and has taken three hours each of sociology and psychology, as well as twelve hours in criminal justice. He has not taken classes in education, special education, counseling, child and family studies, mental health or human nutrition. He has previously worked for the Tennessee Department of Human Services where he helped people apply for food stamps and TennCare. He has also worked with children as a substitute teacher. (Court Doc. No. 23-4.)

After the January 2004 round of interviews, DCS hired Rita Owens and Beverly Jordan. After the October 2004 interviews, DCS hired Tenna Hopkins.

Beverly Jordan has a bachelor's degree in business and an associate's degree in accounting. She has no work experience relevant to the case manager position as she has no experience working in social services or working with children. However, she has taken thirty-three hours of education classes as well as three hours of child and family studies, and six hours of human nutrition. While Plaintiff has only three hours each in psychology and sociology, Jordan has nine hours of psychology and twelve hours of sociology. (Court 16-9.)

Rita Owens has a business degree and has taken six hours of psychology, three hours of sociology, three hours of child and family studies, three hours of human nutrition, and twenty-four hours of law and legal assistance. She has not taken classes in education, special education, mental health or counseling. Owens has no work experience related to social work or working with children. (Court Doc. No. 16-8.)

Tenna Hopkins has a bachelor's degree in management and human resources. She has taken courses in education, special education, counseling, psychology, sociology, family and child studies, human nutrition, mental health, law and legal studies, and nursing. She has worked as a resident advocate at a homeless shelter where she assessed, documented, and counseled homeless individuals. She also has worked as a domestic violence advocate, which involved counseling victims of domestic violence, attending court proceedings, and working on a domestic violence hotline. (Court Doc. No. 16-10.)

The Court finds that Hopkins was more qualified than Plaintiff for the case manager position. She has a more relevant educational background and significant work experience in social services. Because Hopkins was the only candidate hired over Plaintiff after the October 2004 interviews, Plaintiff has failed to sustain his burden of showing that DCS's claim that it hired a more qualified candidate in October 2004 was pretextual. *See Briggs v. Potter*, 463 F.3d 507, 515 (6th Cir. 2006) (affirming district court's finding that plaintiff had not established pretext because the hired applicant had more education and work experience than the plaintiff).

In comparing Plaintiff's qualifications with those for Jordan and Owens, it is a much closer call. It is arguable that Plaintiff had more applicable work experience than both Jordan and Owens having worked at the Department of Human Services and as a substitute teacher. However, both Jordan and Owens arguably had more relevant educational background.

"If two reasonable decisionmakers could consider the candidates' qualifications and arrive at opposite conclusions as to who is more qualified, then clearly one candidate's qualifications are not significantly better than the other's." *Bender*, 455 F.3d at 628. In this

case, the Court finds that reasonable people could differ on whether Plaintiff was more qualified than Jordan and Owens. Plaintiff's own belief in his qualifications compared to other applicants is not sufficient to call into question DCS's business judgment about Plaintiff's relative abilities and experience. *See Williams v. Columbus Metro. Housing Auth.*, 90 Fed. App'x 870, 873-74 (6th Cir. 2004). Thus, Plaintiff's qualifications evidence is not, in and of itself, enough to survive summary judgment. *Id. See also Dobbins v. Tennessee Valley Authority*, 2007 WL 3231798 (E.D. Tenn. October 30, 2007). ("Even if Plaintiff could show that he was more qualified than other employees, evidence that an applicant is marginally better qualified is not, in and of itself, enough to withstand summary judgment.")

> b. <u>Not true motivation</u>

Plaintiff argues that DCS's proffered basis for not hiring him was not its true motivation. He claims that he was discriminated against based on his gender because most of the decision-makers at DCS were female and because they thought he would be too difficult to manage because of his sex.

"To establish pretext under the second method [not the employer's true motivation], the plaintiff admits the factual basis underlying the discharge and acknowledges that such conduct *could* motivate the dismissal, but attacks the employer's explanation 'by showing circumstances which tend to prove an illegal motivation was *more* likely than that offered by the defendant.' " *Smith v. Leggett Wire Co.*, 220 F.3d 752, 759 (6th Cir. 2000) (quoting *Manzer*, 29 F.3d at 1084).

When all of the members of an interview panel are a different gender than the

interviewee, the employment decision is subject to "particularly close scrutiny."  *See*

*Bruhwiler v. University of Tennessee*, 859 F.2d 419, 421 (6th Cir. 1988).  It is uncontested

that Anderson, a female team leader, was the primary decision-maker in both the January

and October employment decisions.  It is also undisputed that all of the team leaders

during the relevant time period, and thus all of the interviewers, were women.  (Coop Dep.

at 21-22.)  Thus, the Court must subject Defendant's employment decision to particularly

close scrutiny.

Plaintiff claims that he was told by a former DCS team leader, Noah Maignon, that

he was being discriminated against because of his gender.  Plaintiff also relies on notes

from an interview with Noah Maignon conducted by the EEOC.[2]

Mr. Maignon told Plaintiff that he did not understand why Plaintiff had not been

hired.  Mr. Maignon said that he tried to get Plaintiff hired and that he believed Plaintiff had

not been hired because of his age and because he was male.  Mr. Maignon told Plaintiff

that one of the team leaders, Ms. Aschenbacher, would not hire him.  Mr. Maignon also

told Plaintiff that Karen Gipson, a DCS employee, had said that she had worked with

Plaintiff before and that he was not a good employee, that he was not trustworthy, and that

she would quit if he were hired.  (Petty Dep. at 60-61, 64.)

The notes from the EEOC's interview with Mr. Maignon show that Maignon said that

he overheard comments made about Plaintiff's age, his military background, and his

gender.  The overall consensus was that Plaintiff would be difficult to manage because of

---

[2]        There is a serious question about the admissibility of the EEOC's interview notes and therefore the propriety of the Court's reliance on them at summary judgment.  For purposes of its analysis of the instant motion, the Court will assume that the notes are admissible.

his age, gender, and military background. (Court Doc. No. 23-9 at 1.)

Even assuming that this evidence is admissible, Plaintiff has not shown that Anderson, the undisputed decision-maker in both January and October 2004, was biased against him due to his gender. Mr. Maignon did not attribute any of the discriminatory behavior or comments to Anderson directly. Nor is it clear from the evidence that Anderson participated in or overheard any of the above conversations. "Statements made by nondecisionmakers cannot suffice to satisfy the plaintiff's burden of demonstrating animus." *Smith*, 220 F.3d at 759 (internal quotations omitted). *See also Wilson v. Stroh Cos. Inc.*, 952 F.2d 942, 945-46 (6th Cir. 1992) (holding that racial animus by plant manager could not be imputed to upper-level manager who made decision to terminate absent proof of a connection); *Heath v. Ohio Turnpike Commission*, 85 Fed. App'x 494, 500 (6th Cir. 2004) (racial epithets that were not linked to the decision maker were not probative of the motivation behind the employment decision).

Plaintiff has produced no evidence showing that Anderson's refusal to hire Plaintiff was motivated by his gender. Plaintiff's bare allegation that he was discriminated against based on his gender is not enough, without supporting evidence, to survive summary judgment. *See Felder v. Nortel Networks Corp.*, 187 Fed. App'x 586, 594 (6th Cir. 2006) ("Plaintiff's conclusory allegations about the 'white culture' at Nortel cannot be imputed to Nortel's decision-makers in the disputed hiring decisions absent some specific evidence of racial animus on the part of the actual decision-makers.")

DCS has consistently maintained that Plaintiff was not hired because he misrepresented information on his employment application and because of his attitude during the October 2004 interview. That DCS has not wavered or altered its explanation

-25-

of why Plaintiff was not hired goes against Plaintiff's argument that the proffered basis was pretextual. *See Thurman v. Yellow Freight Sys.,Inc.*, 90 F.3d 1160, 1167 (6th Cir. 1996) ("An employer's changing rationale for making an adverse employment decision can be evidence of pretext.")

The Court finds that the Plaintiff has not met his burden of showing, by a preponderance of the evidence, that the legitimate reasons offered by the Defendant for not hiring Plaintiff were not its true reasons, but were a pretext for discrimination. Accordingly, Plaintiff's claims against Defendant for gender discrimination in violation of Title VII arising out of the January 2004 and October 2004 employment decisions are **DISMISSED WITH PREJUDICE**.

**C.    Plaintiff's Applications Prior to January 2004.**

Plaintiff alleges that he was subject to a pattern of discrimination going back to September 2002.  (Court Doc. No. 1 ¶ 4.)  Plaintiff appeared on the register of eligible employees for the DCS case manager position and was not hired on six occasions: November 2002, June 2003, July 2003, October 2003, January 2004, and October 2004. (Petty Dep. at 28-30.)  Plaintiff filed a claim with the EEOC on November 10, 2004.  (Court Doc. No. 16-6.)

In Tennessee, any claim filed more than 300 days "after the alleged unlawful employment practice occurred" is barred by the statute of limitations.  *Jones v. Airco Carbide Chem. Co.*, 691 F.2d 1200 (6th Cir. 1982); *Jackson v. Richards Med. Co.*, 961 F.2d 575, 578-79 (6th Cir. 1992) (noting that Tennessee is a deferral state and subject to the 300 day limitations period).  *See also* 42 U.S.C. § 2000e-5(e)(1).  The 300 day

limitations period is "triggered at the time the alleged discriminatory act occurred." *Dixon v. Anderson*, 928 F.2d 212, 216 (6th Cir. 1991). The alleged discriminatory act in this case was DCS's decision to hire someone other than the Plaintiff. DCS's decision not to hire Plaintiff in November 2002, June 2003, July 2003, and October 2003 occurred more than 300 days before Plaintiff filed his EEOC charge. Plaintiff's claims arising out of these employment decisions are therefore time-barred unless saved by the continuing violations doctrine.

The continuing violations doctrine is a narrow exception to the 300 day limitations rule in Title VII cases. *Cox v. City of Memphis*, 230 F.3d 199, 202 (6th Cir. 2000). "[W]here there is an ongoing, continuous series of discriminatory acts, they may be challenged in their entirety as long as one of those discriminatory acts falls within the limitations period." *Haithcock v. Frank*, 958 F.2d 671, 677 (6th Cir. 1992). A discriminatory act within the limitations period is therefore a prerequisite to the consideration of whether acts outside of the limitations period are saved by the continuing violations doctrine.

Plaintiff's claim is timely only with regard to the January 2004 and October 2004 hiring decisions. As discussed above, Plaintiff has not met his burden of showing that DCS discriminated against him when it chose to hire other applicants in January 2004 and October 2004. Plaintiff has therefore failed to show that any discriminatory act occurred during the limitations period and his claims arising out of the other four registers cannot be saved by the continuing violations doctrine.

Accordingly, Plaintiff's claims for gender discrimination under Title VII arising out of the November 2002, June 2003, July 2003, and October 2003 registers time-barred and

are **DISMISSED WITH PREJUDICE**.

**IV.      CONCLUSION**

For the reasons discussed above, Defendant's Motion for Summary Judgment [Court Doc. No. 12] is **GRANTED**.  Defendant's Motion in Limine to Exclude Inadmissible Hearsay [Court Doc. No. 27] is **DISMISSED AS MOOT**.  Plaintiff's claim under the ADEA is **DISMISSED WITHOUT PREJUDICE**.  His claim under Title VII is **DISMISSED WITH PREJUDICE**.  The Clerk shall close the case.

SO ORDERED this 28th day of December, 2007.


_____*/s/Harry S. Mattice, Jr.*_____
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE